## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDRE MILARDO, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 3:18-cv-1224 (VAB) |
| | : | |
| COMMISSIONER SEMPLE, *et al.,* | : | |
| *Defendants.* | : | |

### INITIAL REVIEW ORDER

Andre Milardo ("Plaintiff"), has filed a Complaint under 42 U.S.C. § 1983 against Commissioners Semple and Leo Arnone; Deputy Commissioners James Dzurenda and Cheryl Cepelak; Wardens Carol Chapdelaine and Edward Maldonado; Director of Engineering Steve Link; Head of Maintenance Richard Hardy; Plant Engineer Kevin Roy; Environmental Analyst Timothy Carey; Maintenance Officers Ronald Trap, Robert Gero Jr., and David Bell; Correctional Officers Walter Sullivan, Miquel Acosta, Roger Denino, and Robert Jordan; and GMO Goodwin (collectively, "Defendants").

Mr. Milardo alleges that Defendants exposed him to unhealthy and hazardous conditions during his confinement at Osborn Correctional Institution in Somers, CT ("Osborn") in 2015 and during his more recent re-incarceration at Osborn.

For the reasons explained below, the Complaint will be **DISMISSED in part**.

## I.      BACKGROUND

### A.      Factual Allegations

In 2015, Mr. Milardo allegedly was confined in the Q-Building housing units at Osborn. *See* Compl., ECF No. 1 at 1 ¶¶ 2–3 (July 23, 2018). Mr. Milardo alleges the following conditions of confinement during that time: unhealthy air quality due to friable asbestos, "unsafe" and "hazardous" drinking water, and the presence of high levels of polychlorinated byphenyls ("PCBs"). *Id.* ¶ 2.

In the 1990s, unsafe levels of tetrachloroethylene ("TCE") allegedly were discovered in two of Osborn's wells, which provided drinking water to inmates and staff in the facility. *See id.* at 3–4 ¶ 10. In 1993, after the area containing the wells allegedly was declared a State Superfund, the TCE contamination was remediated. *Id.* at 4 ¶ 11. In 2008, inmates at Osborn allegedly filed a lawsuit in state court complaining that the water had a bad taste and foul odor. *Id.* at 4 ¶ 11 (referencing a lawsuit "entitled Johnson v Rell, HHD-CV-08-5016589-S"). A judge allegedly dismissed the lawsuit on "technical, jurisdictional grounds, but the complaints regarding the condition of the water were clearly made public." *Id.*

In November 2011, prison officials, including Commissioner Arnone, Deputy Commissioners Dzurenda and Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, and Environmental Analyst Carey, allegedly became aware of the existence of PCBs in the caulking and glazing of windows and bathroom fixtures in the Q-Buildings at Osborn, but failed to take any action to remedy the matter. *Id.* at 7–9 ¶¶ 28–30.

In 2016, Commissioner Semple allegedly acknowledged that the Q-Buildings were uninhabitable when he issued a memorandum indicating that the Department of Correction would be closing the Q-Buildings "due to [] infrastructure problems" rather than renovating them. *Id.* at 9 ¶¶ 31–32. Nevertheless, "inmates remained housed in the Q-buildings for several months," until September 2016. *Id.* at 9 ¶ 32.

Mr. Milardo alleges that despite the eventual closing of the Q-Buildings at Osborn, he was "regularly exposed" to friable asbestos and unsafe drinking water, which he describes as "brown, cloudy or opaque, with a strong acrid and offensive odor and taste." *Id.* at 1–3 ¶¶ 2–8. Although there allegedly was remediation of the asbestos present in the church, the medical unit,

the school, the reception area of the visiting room, the warden's office, and the deputy warden's office, the housing unit where Mr. Milardo was confined allegedly had not undergone asbestos remediation. *Id.* at 2 ¶ 6.

On an unspecified date, Maintenance Officers Trap, Gero, and Bell, allegedly "illegally drilled holes in 'chassway[sic] sewage pipes' exiting the housing units at Osborn." *Id.* at 10 ¶ 34. The holes allegedly allowed "raw sewage, including fecal matter," to seep into wells containing drinking water used by inmates at Osborn. *Id.* As a result, Mr. Milardo allegedly was forced to drink water that was brown and cloudy, and had an offensive odor and taste. *Id.* at 3 ¶ 8; 10 ¶ 34. During Mr. Milardo's confinement at Osborn, staff members allegedly did not drink or cook with the drinking water on site, but brought their own bottled water. *Id.* at 3 ¶ 8. More than thirty inmates allegedly became infected with H-pylori bacteria from drinking the contaminated drinking water at Osborn. *Id.* at 3 ¶ 9. Mr. Milardo alleges that this infection "is most often found in underdeveloped nations." *Id.*

Plant Engineer Roy allegedly was in charge of regularly testing the drinking water at Osborn. *Id.* at 10 ¶ 35. Plant Engineer Roy allegedly was aware that the water was unsafe to drink but made no effort to improve the condition of the water or provide bottled water for inmates to drink. *Id.* Mr. Milardo further alleges Plant Engineer Roy failed tos inform inmates about any violations issued by the Department of Health regarding samples that he collected from the drinking water at Osborn. *Id.*

Other than the Q-Buildings, Mr. Milardo alleges that no other buildings or housing units at Osborn have been tested for the presence of PCBs. *Id.* at 5 ¶ 16. At least one former inmate,

James Babulsky, has allegedly tested positive for unsafe levels of PCBs in his bloodstream. *Id.* at 11 ¶ 37.

At the time he filed this Complaint, Mr. Milardo allegedly suffered from extreme abdominal pain, swelling under the left side of his ribs, and headaches that lasted for hours. *Id.* at 1 ¶ 3. On two occasions in 2016, Mr. Milardo allegedly vomited up blood and sought medical attention in an emergency room. *Id.*

### B.     Procedural History

On July 13, 2018, Mr. Milardo filed this Complaint, Compl., and moved for leave to proceed *in forma pauperis*, Prisoner's Application to Proceed In Forma Pauperis, ECF No. 2 (July 23, 2018) ("IFP Mot.").

On August 17, 2018, Magistrate Judge William I. Garfinkel denied Mr. Milardo's motion for leave to proceed *in forma pauperis* without prejudice, and ordered "[a]ll further proceedings in this matter . . . be held in abeyance . . . pending Mr. Milardo's delivery of the [$400.00] filing fee." Order, ECF No. 8 (Aug. 17, 2018).

On October 2, 2018, Mr. Milardo paid his filing fee. Staff Notes (Oct. 2, 2018).

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory);

4

*Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

The Court construes Mr. Milardo's allegations as a claim that Defendants subjected him to unconstitutional conditions during his confinement in violation of the Eighth Amendment. In addition to compensatory and punitive damages, Mr. Milardo seeks injunctive relief from Defendants in their official capacities and compensatory and punitive damages from Defendants in their individual capacities. Compl. at 11 ¶¶ 38–44.

### A.   Claims Against Maldonado, Hardy, Sullivan, Acosta, Denino, Jordan and Goodwin

To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a state actor. *West v. Atkins*, 487 U.S. 42, 48–49 (1988). For any action under Section 1983, a plaintiff must also allege facts showing the defendants' direct and "personal involvement . . . in [the] alleged constitutional deprivations." *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Mr. Milardo does not mention Warden Maldonado, Head of Maintenance Hardy, GMO Goodwin, Correctional Officer Sullivan, Correctional Officer Acosta, Correctional Officer Denino, or Correctional Officer Jordan in his Complaint, other than in the case caption and the description of the parties. As a result, Mr.

6

Milardo has not alleged that any of these defendants violated his federally or constitutionally protected rights.

Accordingly, the claims against Warden Maldonado, Head of Maintenance Hardy, GMO Goodwin, Correctional Officer Sullivan, Correctional Officer Acosta, Correctional Officer Denino, and Correctional Officer Jordan will be dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### B.    Eighth Amendment Claim Against Remaining Defendants

In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a basic life necessity or "a substantial risk of serious harm" to his health. *Farmer v Brennan*, 511 U.S. 825, 834 (1994).

To meet the subjective element, the inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health

7

or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. The subjective element requires that the inmate allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer,* 511 U.S. at 839–40).

Mr. Milardo alleges that Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, and Environmental Analyst Carey were aware of the hazardous conditions in the Q-Buildings in 2015 due to PCBs, but failed to take action to remedy the situation and did not take action to immediately remove inmates from the Q-Buildings when it became clear that the health of inmates might be at risk. Compl. at at 7–9 ¶¶ 28–30. In addition, these defendants allegedly took no steps to test other buildings or housing units at Osborn for the presence of PCBs. *Id.* at 11 ¶¶ 36.

Mr. Milardo also alleges that Maintenance Officers Trap, Gero, and Bell were responsible for drilling holes in the sewage pipes which led to the contamination of the drinking water at Osborn, and that Plant Manager Roy was involved in and aware of tests indicating that the drinking water was not healthy. *Id.* at 10 ¶¶ 34–35.

Consequently, the Court concludes that Mr. Milardo has asserted facts sufficient to state plausible conditions of confinement claims related to unsafe drinking water and the presence of PCBs against Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Deputy Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, Environmental Analyst Carey, Maintenance Officer Trap, Maintenance Officer Gero, and Maintenance Officer Bell in their individual and official capacities.

The Complaint includes no allegations, however, regarding any defendant's awareness of the existence of friable asbestos in the Q-Buildings and other buildings at Osborn during the time periods when Mr. Milardo was confined at Osborn. As a result, Mr. Milardo has not alleged that any defendant was deliberately indifferent to his health by exposing him to friable asbestos.

Accordingly, although the Eighth Amendment conditions claim related to the unsafe drinking water and the presence of PCBs will proceed, the claim related to the existence of friable asbestos at Osborn will be dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

**(1)**     The Eighth Amendment claim related to the existence of friable asbestos at Osborn against all Defendants and the Eighth Amendment claims related to the unsafe drinking water and presence of PCBs at Osborn against Warden Maldonado, Head of Maintenance Hardy, Correctional Officer Sullivan, Correctional Officer Acosta, Correctional Officer Denino, Correctional Officer Jordan, and GMO Goodwin are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). The Eighth Amendment conditions of confinement claims related to unsafe drinking water and the presence of PCBs at Osborn will proceed against Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Deputy Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, Environmental Analyst Carey, Maintenance Officer Trap, Maintenance Officer Gero, and Maintenance Officer Bell in their individual capacities and their official capacities to the extent that Mr. Milardo seeks injunctive relief.

9

**(2)** The Court will permit Mr. Milardo until **September 11, 2020** to file an Amended Complaint to the extent that he can assert facts to (1) demonstrate how any defendant was aware of the existence of friable asbestos at Osborn and failed to take action to protect him from harm to his health from this condition; and/or to (2) demonstrate how Warden Maldonado, Head of Maintenance Hardy, Correctional Officer Sullivan, Correctional Officer Acosta, Correctional Officer Denino, Correctional Officer Jordan, and/or GMO Goodwin were aware of the presence of PCBs in the Q-Buildings at Osborn and/or the unsafe drinking water in the Q-Buildings and other buildings at Osborn and failed to take action to protect him from harm to his health from either or both conditions.

Because an Amended Complaint completely supersedes the first Complaint, any Amended Complaint should also include the allegations in support of the Eighth Amendment conditions claims described above that the Court has determined should proceed. If Mr. Milardo chooses not to file an Amended Complaint, the case will proceed only as to the Eighth Amendment conditions of confinement claims described above against Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Deputy Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, Environmental Analyst Carey, Maintenance Officer Trap, Maintenance Officer Gero, and Maintenance Officer Bell in their individual and official capacities.

**(3)** **By September 11, 2020, Mr. Milardo shall file a written notice of his current mailing address[1] as required by Local Rule 83.1(c)(2). Failure to file a notice within the time specified may result in dismissal of the case.**

---

[1] When Mr. Milardo filed this action, he was confined at Osborn, IFP Mot. 2; however, it is evident from the State of Connecticut Department of Correction's website that Mr. Milardo is no longer confined at Osborn. *See* DEP'T OF

(4)     Mr. Milardo paid the filing fee. Thus, he is responsible for serving the Complaint on Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Deputy Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, Environmental Analyst Carey, Maintenance Officer Trap, Maintenance Officer Gero, and Maintenance Officer Bell in accordance with the requirements of Rule 4, Fed. R. Civ. P. **Within thirty days of the date** of this order, or if he files an Amended Complaint by September 11, 2020, within thirty days of that filing, Mr. Milardo shall effect service of the Complaint on Commissioner Arnone, Commissioner Semple, Deputy Commissioner Dzurenda, Deputy Commissioner Cepelak, Warden Chapdelaine, Director of Engineering Link, Plant Engineer Roy, Environmental Analyst Carey, Maintenance Officer Trap, Maintenance Officer Gero, and Maintenance Officer Bell in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the Complaint, and a copy of this Order to each defendant. Mr. Milardo shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendants in their individual capacities.

In accordance with the requirements of Rule 4, Fed. R. Civ. P., Mr. Milardo shall also effect service of the Complaint on defendants Arnone, Semple, Dzurenda, Cepelak, Chapdelaine, Link, Roy, Carey, Trap, Gero, and Bell in their official capacities by serving a copy of the summons, Complaint, and this Order on the defendants using the address of the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141.

---

CORR., http://portal.ct.gov/DOC (last visited Aug. 3, 2020) (Mr. Milardo's current confinement location may be found under the Inmate Search tab using his Inmate Number 250178). Local Rule 83.1(c)(2) requires a litigant to keep the Clerk apprised of an address where Court orders and rulings can be mailed to him or her. To this date, Mr. Milardo has not filed a notice indicating his current mailing address.

(5)      The Clerk of Court shall send Mr. Milardo instructions for service of the Complaint on the defendants in their individual and official capacities, together with one copy of the Complaint, one copy of this Order, eleven blank Notice of Lawsuit forms, three blank Waiver of Service of Summons forms, and one summons form completed and issued by the Clerk for all defendants (Arnone, Semple, Dzurenda, Cepelak, Chapdelaine, Link, Roy, Carey, Trap, Gero, and Bell) using the address of the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141). Mr. Milardo shall file the signed Waivers of Service of Summons forms that he receives from the defendants in their individual capacities with the Clerk. He shall also file a return of service documenting when the defendants were served in their official capacities.

(6)      Defendants Arnone, Semple, Dzurenda, Cepelak, Chapdelaine, Link, Roy, Carey, Trap, Gero, and Bell shall file their response to the Complaint, either an Answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7)      Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **February 26, 2021**. Discovery requests need not be filed with the Court.

(8)      All motions for summary judgment shall be filed by **April 2, 2021**.

(9)      The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**(10)**    The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.


**SO ORDERED** at Bridgeport, Connecticut, this 7th day of August, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

13